Good morning. Please do. Good morning, your honors. Alex Harris of Gibson Dunn and Crutcher for the appellant Jennifer Galvan, and if I may, I'd like to reserve four minutes for rebuttal. The three-year-old victim in this case died from a blow to the head, suffered on January 15th, 2010. At trial, the state put on evidence of the heinous abuse and alienation that the victim suffered in the months before January 15th, at the hands of Jennifer Galvan and her then-husband, Joe. For these acts, Jennifer Galvan was convicted of child abuse and torture, and she is serving sentences of 10 to 15 years and 23 to 40 years for those crimes, respectively. But we are here today because the state relied on that same evidence to convict Jennifer Galvan of the murder on January 15th, without offering any evidence of multiple essential elements of the offense, most obviously two. First, any evidence that she struck the fatal blow or even touched the victim that day, which is essential to convict her as the principal. If the state's theory was aiding and abetting, the state would need to submit evidence that she provided any aid of the murder at the time of the murder to Joe, who was the principal. And the state court, in its divided opinion, affirming her conviction, acknowledged that this was an element of the offense, however, did not even purport to offering any evidence of this element. So, as relevant to Ms. Galvan's murder conviction... By aid, do you mean permit and encourage? Permit is not how the state court has defined it. In People versus Moore, the Michigan Supreme Court said that there has to be acts or encouragement of the crime. So, for example, in People versus Burrell, the defendant was charged as an aider and abetter. He was present in the vehicle where the crime occurred, but did not participate, did not render any aid for that crime. And therefore, the state court said that there was not evidence of aid. Similarly, in People versus Barrera, the state court, the Michigan Supreme Court held that you have to have evidence of aiding and merely hitting the victim or kicking the victim in the face can evidence perhaps an intent to injure. But if that is not tied to the actual murder itself that someone else committed, that is not aid and it does not show the mens rea element either. What about, you know, we have a case called Sanford versus Yuckins from 2002 that says that even though mere presence at the time is not sufficient, that being present and giving silent moral support is enough to support a conviction of aiding and abetting. Well, what about her silent moral support for the abuse that was taking place? So again, the abuse has to be connected to this specific murder. In Sanford, there was evidence that the defendant actually provided tea for the principal who was orchestrating the rape. It is true that in Michigan, if there were a prior agreement between the defendant and the principal that, in essence, their silence would constitute support, approval, and encouragement, as was the case in People versus Chapman, then in that context, it could be the case. But mere inaction cannot be the... There was almost a tag team kind of effect with these two. I mean, they would beat this child at various stages. Not with respect to the murder. Again, we are not... Not to the specific date, as far as we know. And the only one that says no is the defendant that may or may not have to believe her testimony. So that actually is not the case. There is substantial evidence that she was not present. The state's own medical examiner, who conducted the autopsy, testified that the overwhelming likelihood is that the fatal blow was inflicted in the minutes to an hour before... They could have been there, then. There... So not according to the testimony of both Jennifer and of Joe himself, in spite of this not exactly exculpating him, he... He didn't testify, right? Sorry, he relayed to officers who then testified that he was alone with the victim in the... Right. So she testified and... Here's a situation, excuse me. She's an LPN. She's a nurse. She comes home and her child is being subjected to the first stage of torture, has not eaten, standing and facing a wall. She says to the police, well, I put some jam and toast out and I went to bed, knowing this child was being, in my view, tortured. Didn't see that the child had anything to eat. This child had not gained one pound as a three-year-old in three years... In one year, at least. Weighed the same a year ago. She gets up and according to her testimony, at least, she says Joe's going to punish him some more, put him in a shower because this little girl wet on herself, which was a torture that she had administered in the past. And one of them had beat the child while the child was being showered. Again, she did nothing. She didn't see the child got anything to eat. She just went on her way as she says and Joe supposedly beat the child. Isn't that encouragement? Going along, whatever you want to do? I mean, what more would you need? Not with respect to the murder, the cause of death... We're not talking... This is the felony of child abuse. She's not challenging her conviction for child abuse or for torture. But it's a felony murder doctrine that we're talking about, isn't it? So under Michigan law, the elements of murder must nonetheless be proven. This is not like felony murder in 1L criminal law. Michigan is a little bit different. Felony murder simply takes an already existing murder. All of the elements of second-degree murder must be satisfied. And then if it was in the context of child abuse, that raises it to first-degree murder and makes her eligible, as she received here, for life without parole. But all of the elements of murder must still be satisfied under Michigan law as the state does not dispute. And here, the state court acknowledged that it needed evidence of aid of the murder at the time of the murder. In People v. Barrera and People v. Sims, the Michigan courts have held that the specific aiding and abetting has to specifically be with regard to the act of murder itself. And so does the mens rea element. And the state courts, in spite of having acknowledged this requirement, nonetheless did not even purport to cite any evidence of those essential elements. And as Judge Shapiro noted in his dissent, the most that the state courts eight-hour window evidence about her presence, which itself the first judge to hear the evidence in this case, Judge Cynthia Platzer, held there was not even probable cause of to indict her for murder, even if that evidence is a reasonable inference, which we do not believe it is. Nonetheless, under Michigan law and under the law of this court, you cannot take mere presence to show either aiding and abetting. I think what I outlined was more than mere presence. So it is also the case that even animus towards the victim combined with presence is not sufficient. So that was the case in Joseph v. Coyle, where this court granted habeas relief in spite of the AEDPA deferential standard and the Jackson deferential standard. And it was the case in Newman v. Metrish, again, granting habeas relief. The element that you're claiming missing here is really malice, is it not? No, that is one element that we are claiming is missing. However, the most obvious elements that are missing are aid of the murder in order to convict her of aiding and abetting. Under an aiding and abetting theory, the state needed to offer evidence that she aided the murder. And in order to convict her as the principal, the state would need evidence that she, in fact, struck the fatal blow. The state courts, nor the state... Why does she have to strike the final blow under an aiding and abetting theory? No, that would only be under a principal theory. Under an aiding and abetting theory, the state would need evidence that she provided aid of the murder itself at the time of the murder itself. The state court acknowledged this, acknowledged that she had challenged that lack of evidence, and yet did not even state that there was any such evidence of the offense. This, instead, the state court said that she was complicit in a general pattern of abuse, but it is an unreasonable application of Jackson versus Virginia to acknowledge elements of the offense and then not find them satisfied, not even state that they are satisfied, and then affirm the conviction anyway. Jackson gives state courts a tool of self-policing. So your argument is she's not an aider and abetter because she did not... Provide any aid is one of the... Well, forget that. As I understood your answer to Judge McKeague is that she has to strike the final death blow to be an aider and abetter. No, no, no, no, not for aiding and abetting. She has to provide some aid of the murder for aiding and abetting. She also has to have the intent that her actions are rendering such aid, and she has to meet the mens rea element. The state court did not even contend that there was any evidence of the aiding element or of the intent to aid element. We can have a dispute about whether or not we don't think that there is sufficient evidence or that a state court could reasonably find a sufficient evidence of the mens rea element either, but the most glaring obvious deficiency in the state court's opinion is not even contending that there is any evidence that Ms. Galvin provided any aid of the murder which they indisputably required. Well, the district court listed eight specific pieces of evidence and support, didn't it? Not of aid. So that there certainly is evidence of prior abuse in this case, which again, Ms. Galvin is not challenging her convictions for child abuse or torture, but the state has never articulated a theory of aid, of what possible aid she provided to the murder specifically. That's a good time for us to hear from the state, and then you can come back and rebut what the state Andrea Christensen Brown of the Michigan Attorney General's Office appearing on behalf of Warden Anthony Stewart. The district court in this case rejected Jennifer Galvin's claim that there was insufficient evidence to support her conviction. Instead, it found that that evidence was overwhelming, and we would ask this court to affirm that decision. This court is very well aware of the doubly deferential standard of review required in habeas cases. I will not belabor that point. I know this court is very well aware of that. However, I do want to make two points that are significant to this case. First of all, regarding the standard, the Supreme Court has instructed that whenever there are conflicting inferences from the evidence presented which this case is admittedly loaded with, that a reviewing court must presume that the trial, or excuse me, that the trier of fact resolved those conflicts in favor of the And number two, regarding circumstantial evidence. Circumstantial evidence can sustain a conviction so long as the totality of that evidence can allow any reasonable trier of fact to find guilt beyond a reasonable doubt. And that's what we have here. Ms. Galvin, on the other side, is attempting to argue that there needs to be something more. At the time that the blow was struck to this three-year-old's head, that there needs to be some more, per se, direct evidence. DNA evidence, fingerprint evidence, eyewitness testimony. We know that that's not the case. Kavazos v. Smith discusses that that's not the case. Circumstantial evidence is just as strong and just as compelling. Was there any evidence that Galvin intended to aid in the specific fatal abuse of the daughter? Absolutely, Your Honor. And that is based on not only what occurred that moment when she was in the shower and the final blow was struck. That's not the solitary moment that the jury needs to consider. Circumstantial evidence includes a universe of facts, which includes the prior abuse. So when the jury hears from three dozen witnesses, including medical personnel, police personnel, but most importantly, friends, family, coworkers, even strangers at a photograph studio that discussed the mistreatment, the horrible treatment that this girl endured for the year prior to her death, that evidence is also fully within the jury's purview to review. And that evidence provides not only the encouragement element and the intent element under aiding and abetting, but also under the felony murder statute. What case can you cite us that supports your statement for that? I would point the court specifically to Davis v. Laffler. That's an en banc decision from this court in 2011. And, pardon me? I know you're familiar with that case, Your Honor. I'm familiar. So that case specifically, and also there are other, these are direct review cases, but that talk about the totality of the evidence that can be presented. Even Jackson, was it Jackson v. Virginia was a circumstantial evidence case. So, we're not talking about the moment that the blow was struck. We're talking about everything up to, including, and what happened after. Jennifer Galvin actually left this house when emergency personnel were performing CPR on her daughter. Her stepdaughter, but her daughter. She left that house when they were trying to save her life. This is the sort of appalling evidence that this and all of it together, I would submit that not even all of it together, but all of it together, which they are permitted to review, not only establishes every single element of felony murder, but every single element of aiding and abetting. The Michigan Court of Appeals decision that we're reviewing here, and for which you're asking us to give at the deference, as I understand it, basically said that there was sufficient evidence that, from which you could draw an inference that she was complicit in the abuse, that's first part, and that a natural consequence of that abuse would be death. Yes, sir. Now, essentially, what I understand the appellant to be saying here is that, yes, there was child abuse. Yes, she's being properly held responsible for that, but there isn't a proper inference that you could draw that that abuse would lead to the specific event of death. So, how do you respond to that is that, through the litany of witnesses who testified to the prior abuse, she had been subjected to prior hits to the head, to be most specific. She had prior black eyes. She had a knot on her head the size of a tennis ball. One of her caregivers testified to that. And also, the medical examiner, Dr. Spitz, when he was performing the autopsy, found more than 20 points of impact on her head that were in various stages of healing. This girl had, and several of those were considered to be implemented on the day that she died. So, all of these injuries to her head show that she'd been hit in the head previously. Jennifer Galvin admitted to the jury when she testified, and also to several other witnesses, that she was fully involved with the disciplining of the victim. So, are you arguing that somebody here actually intended to kill her? Or are you rather arguing that, at the very least, they had created a risk where great bodily harm, including death, was the probable result? Correct, Your Honor. And just to clarify, felony murder provides that there needs to be intent to either kill, cause great bodily harm, or create a risk of great bodily harm. And if you're repeatedly striking a three-year-old in the head, that creates a risk of great bodily harm. And she had hemorrhaging in her head. That is specifically listed in the statute as great bodily harm. I'm not suggesting that it was the petitioner's duty to prove anything, obviously, at the trial. But was there even a claim made or evidence adduced that this abuse, as horrific as it was, didn't rise to the level of the probable result being death? Did that come up during the trial? I'm sorry, Your Honor. I guess I'm not understanding your question. Let me phrase it a different way. You presented medical experts. The medical experts testified as to the abuse that this child had incurred, including on the day of her death. The defendant doesn't have to offer any evidence, but the defendant certainly can, for example, cross-examine those experts. So through cross-examination or any other source, was there really ever any issue raised in this case about whether the extent or the degree of abuse would likely lead to death, whether that day or the next day or the day after that? I think that the impression that the medical examiner was to leave was that the impacts to her head, causing massive damage, a 3-year-old can't endure that sort of punishment without those, without that result. And that is a reasonable inference from the medical examiner's testimony. And my friend on the other side discussed cases where intent to injure is not intent to kill. That was a case, and it's factually distinguishable. We're talking about an adult that was kicked in the head. We're not talking about a 3-year-old without a fully developed brain getting smacked around to the point where there were multiple impacts causing her brain to shake and rupture. That's what we're talking about here. And there were, all of the inferences here were, the jury has broad discretion to determine what the reasonable inferences are. And the direct review court has, they have to draw a very difficult line between speculation and inference. And here, the finding of inference was absolutely reasonable under both Jackson's standard and under the Edpus standard. Now the, just one more point, the disagreement between the jurists when it comes to the state courts magistrate judge refusing to bind over on this charge or finding there wasn't sufficient evidence to bind over. And also the lone Supreme Court, Supreme Court, excuse me, the lone Court of Appeals judge that dissented based on sufficiency. Three-judge panel that dissents always alone. Quite, quite right. Well taken. Those are the two judges that differ in opinion on the sufficiency of the evidence. And on the other side, you have the circuit court judge that allowed the bind over to occur. You have the two Court of Appeals judges that found the evidence sufficient. You have the Michigan Supreme Court that found that there was no reason to review the case. And you also have the district court judge that found this evidence to be overwhelming. You've got five, counting the Michigan Supreme Court as one judge, which it's clearly not. You've got five judges on this side saying that there's sufficient evidence. And you've got two judges on this side saying that there isn't. That is fair-minded disagreement. I tried that argument once and lost. Well, that's clearly not what I'm going for, Your Honor. But AEDPA allows for fair-minded disagreement. We know this from Harrington v. Richter. This Court is very familiar with that case. As long as reasonable jurists can disagree about the correctness of a state court decision, the conviction must stand. Now, Ms. Galvin is using that disagreement as a basis for a grant. Again, Harrington v. Richter tells us that's a reason to deny. With that being said, I'm happy to answer any more questions. All right. Thank you. The State would ask this Court to affirm. Thank you. Mr. Harris? Thank you. It is certainly the case that circumstantial evidence can support a conviction. However, under Michigan law, there must be aiding of the specific murder that took place in order to sustain a conviction for murder. The State relies only on the evidence of prior abuse and has still pointed to no evidence that Jennifer Galvin gave any aid at the time of the murder to the act of murder that occurred. Again, her challenges for child abuse and torture for those prior events are not before this Court at the moment. We are not challenging that on appeal. The State also mentions... Is there any dispute that the evidence shows that at a minimum, and we'll talk about whether it's enough in a minute, that she acquiesced in this additional discipline occurring that morning after the child wet herself? No. So after the child wet herself, the only evidence is that Joe told Jennifer I'm going to give the child a shower. Assuming that the jury concluded, and you can argue it was unreasonable, that there had been a pattern of abuse in this method of discipline, is that enough? No. And why not? Because it is not tied to the murder. Under People vs. Sims and People vs. Barrera, the aiding and all of the other elements of aiding and abetting must be tied specifically to the murder. Actually, just reading out this whole concept of the probable result of something? So, no, it again has to be tied to the murder, and as the State courts have defined that potential vision of finding the mens rea element, the State has said, the State courts have said that there has to be wanton and willful disregard of the likelihood of the natural tendency of those actions to cause death. So basically, you're saying that if somebody's been repeatedly beaten for a long period of time, the natural consequence of which is that sometime it's going to result in their death. There has to be evidence that death was intended the specific time as opposed to a natural consequence that day, the next day, or the day after? So for the mens rea element, it does have to be tied to the death specifically. It cannot be the case that every person who lives in an abusive household is liable for murder if a death happens to occur in that household. But she was one of the perpetrators of the abuse. It's a little different than somebody living in the house. Certainly, and we've discussed other cases. And certainly she was involved in at least one type of child abuse that we know was going to result in her death, and that was starving this little child to death. Now your claim is that isn't the predicate act here. So the fact that she didn't succeed in starving her to death, that she succeeded in acquiescing in her husband beating her to death, that's not enough. The intent has to be connected to the cause of death. And again, the most obvious element that is missing is the aiding element. And again, the state has provided no evidence of that. As Judge Gilman's opinion in Brown v. Palmer makes clear, the state must point to evidence that the defendant not only was merely present, but in fact aided the specific crime. And here, that specific crime is the blow to the head that indisputably caused her. Dr. Spitz, the state's own expert, testified multiple times that the cause of death was the fatal blow that she suffered on that day. If the cause of death had been something else, then we might have a different dispute. But in this case, Jennifer Galvin was charged with the murder that actually occurred, not with a murder that didn't occur. And she was also charged with the child abuse that, and indeed with torture, and she is serving very lengthy sentences for that. And will, regardless of this Court's opinion in this case. Thank you. The case will be submitted. The Court notes that you were appointed under the Civil Justice Act, and we want to thank you and your co-counsel and Gibson Dunn for the excellent defense that you've given to this case. This is a case of very, very disagreeable facts. And you've handled that admirably, and we thank you for your assistance to both Jennifer Galvin and to the Court. Thank you. Thank you very much.